**Eva TWERY, Libelant,**

v.

**HOUSEBOAT JILLY'S YEN, HOUSEBOAT SURFSIDE SIX, Jilly King and Rick Riccardi, Respondents.**

**No. 66–75–Adm–CA.**

United States District Court
S. D. Florida,
Miami Division.

March 15, 1967.

Edward C. Sawyer, of Tobin, Salmon & Feder, Coral Gables, Fla., for libelant.

William C. Lewis, Jr., of Smathers & Thompson, Miami, Fla., for respondent Rick Riccardi.

William C. Norwood, of Fowler, White, Gillen, Collins, Humkey & Trenam, Miami, Fla., for respondents Houseboat Jilly's Yen, Jilly Rizzo and Honey King.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ATKINS, District Judge.

This cause came on for trial on the 23rd day of February, 1967. The Court heard testimony of the witnesses, has considered the evidence and exhibits introduced and heard argument of counsel. After libelant rested, the Court dismissed the libel against the respondent Rick Riccardi for failure to prove a prima facie case against such respondent. Thereupon, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. At all times material to this action, Eva Twery was the owner of property at 4385 Pine Tree Drive, Miami Beach, Florida.

2. During the course of these proceedings, Eva Twery died and Bertha Eber, Administratrix of the Estate of Eva Twery, was substituted as libelant. The estate included the property at 4385 Pine Tree Drive, Miami Beach, Florida.

3. At all times material to this action, the respondents Honey King and Jilly Rizzo were the owners of the houseboat Jilly's Yen.

4. Neither Honey King nor Jilly Rizzo was named a party to the original or amended libel, the owner of Jilly's Yen having been alleged therein to be "Jilly King". However, the stipulation for costs, claim of owner and answers to such libels were filed by Honey King and Jilly Rizzo, in which they asserted ownership of Jilly's Yen.

5. The owners of the Jilly's Yen had kept the houseboat permanently at a dock which lies opposite the Eden Roc Hotel on Miami Beach, in Indian Creek Canal, since it had been purchased from the builder six years ago. This is the dock where the houseboat was secured on September 7, 1965.

6. In order to provide a safe and secure mooring, the owners of the Jilly's Yen had placed two clusters of pilings, of three pilings to a cluster, on the outboard side of the houseboat and had also purchased ⅝ inch wire cables and one inch polypropylene line to be used in the event of storms for the purpose of securing the vessel safely.

7. On the night of September 7, 1965 and the morning of September 8, 1965 Hurricane Betsy, an exceptionally strong and dangerous hurricane, hit Miami Beach.

8. To prevent the houseboat from breaking loose in the event of a hurricane or other tropical storm, the owners of Jilly's Yen had an agreement with Larry Vita to secure Jilly's Yen prior to any storms in the area.

9. Larry Vita was the designer and builder of this type houseboat and had devoted approximately ten years both in study and in actually securing these vessels against storms and hurricanes.

10. Larry Vita had actually secured many houseboats in past hurricanes and storms and his recommendations were used by the United States Coast Guard to secure United States Coast Guard houseboats, which he had built, against storms and hurricanes in the Florida area.

11. Larry Vita had secured the Jilly's Yen in two past hurricanes at the same location where the Jilly's Yen was secured for hurricane Betsy. The method of securing the houseboat Jilly's Yen was the same on all these occasions.

12. The only time any vessel or houseboat he had secured for a hurricane had broken loose prior to hurricane Betsy was when the pilings had broken. This had occurred twice in the past.

13. At approximately 3:00 p. m. on the afternoon of September 7, 1965, Larry Vita and two assistants secured the Jilly's Yen by using the ⅝ inch wire cables which had been obtained for this purpose and also the one inch polypropylene line which was available for such purpose. The cables were wrapped around the pilings on the dock and the bitts of the houseboat in such a manner as to allow the vessel to ride up and down with the tide. The cable was secured with cable clamps in such a manner so that there were actually four separate wire loops which held the vessel to the pilings. The wires were seized around the bitts on the houseboat.

14. Larry Vita and his assistants also used one inch polypropylene line at each of the six pilings about the vessel in such a manner as to have spring lines and breast lines at all critical areas around the vessel to prevent the vessel from breaking loose.

15. The libelant offered no evidence that any of the procedures used by Larry Vita were not reasonable under the circumstances, nor did he offer any evidence that any further precautions could have been taken or should have been taken.

16. The first definite United States Weather Bureau advisory that Hurricane Betsy was a definite threat to the South

Florida area was at 5:00 p. m. on September 7, 1965. At the time of this advisory, the Jilly's Yen had been secured for the storm for about two hours.

17. During the night of September 7, 1965, and the morning of September 8, 1965, the storm created such intensive conditions that the waves from the Atlantic Ocean came between the hotels in the area of the Eden Roc Hotel and washed into Indian Creek Canal where the Jilly's Yen was secured.

18. Sometime during the early morning of September 8, when Betsy was reaching its severest intensity, the Jilly's Yen broke loose from its moorings. None of the pilings pulled out and there were no failures of any cleats or butts on the houseboat.

19. Sometime during the hurricane on September 7, 1965 and the morning of September 8, 1965, the eight foot by twelve foot dock at 4385 Pine Tree Drive was carried away. The seawall, wire fence, and shrubbery in the area of the canal also suffered damage.

20. Sometime after midnight on September 8, 1965 the Jilly's Yen hit the dock at 4385 Pine Tree Drive and then proceeded down Indian Creek Canal. It was found partially sunk at a distance about fifteen feet south of the libelant's property and in front of the property adjacent to the libelant's property.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter in that the acts alleged occurred on the navigable waters of the United States and within the jurisdiction of this Court.

2. The respondents Jilly Rizzo and Honey King were not negligent in securing the houseboat prior to Hurricane Betsy. They used reasonable precaution under the known circumstances and could not have anticipated that the Jilly's Yen would have broken loose during that hurricane.

3. There was no showing that Jilly's Yen could or should have been made more secure or that it should have been moved prior to the hurricane.

4. The Jilly's Yen broke away from its moorings as a result of an inevitable accident or an act of God.

5. Respondents are directed to submit a Final Decree within five days.